IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Yvette Iskander (Eskander),<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>A Place at the Beach IV Home Owner's Association, A Place at the Beach IV Members of the Board of Directors, Atalaya Property Management Inc., Kathy Barringer, Carol Hollendonner, James Knaus, Lisa Watts, Kendell Benjamin, Tracy Blackwood, Gina Pelliccio, Mr. McCutchen, IV,<br><br>　　　　　　Defendants. | Case No. 4:24-cv-04718-SAL<br><br><br>**ORDER** |

　　　　Proceeding pro se, Yvette Iskander ("Plaintiff")[1] brings this action against A Place at the Beach IV Home Owner's Association (the "HOA"), A Place at the Beach IV Members of the Board of Directors, Atalaya Property Management Inc. ("Atalaya"), Kathy Barringer, Carol Hollendonner, James Knaus, Lisa Watts, Kendell Benjamin, Tracy Blackwood, Gina Pelliccio, and Mr. McCutchen, IV ("Mr. McCutchen") (collectively, "Defendants"). [ECF No. 1.] Defendants move to dismiss all claims against them. *See* ECF Nos. 53 & 79.[2] Plaintiff opposes their motions. *See* ECF Nos. 75 & 93.

---

[1] In the caption of her pleadings, Plaintiff includes the alternative spelling of "Eskander" in parentheses. For consistency, the court refers to her as "Iskander," which is the initial spelling she lists and the spelling she includes on much of her correspondence.

[2] All Defendants other than Mr. McCutchen (the "HOA Defendants") joined in a single motion to dismiss. [ECF No. 79.] Mr. McCutchen appeared separately and filed his own motion to dismiss. [ECF No. 53.]

This matter is before the court on the report and recommendation ("Report") issued by United States Magistrate Judge Kaymani D. West, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), recommending that Defendants' motions be granted. [ECF No. 99.] Plaintiff objects. [ECF No. 102.] For the following reasons, her objections are overruled, the court adopts the Report as modified below, and Defendants' motions to dismiss are granted.

I.     Legal Standards

   A.     Review of a Magistrate Judge's Report

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the Report to which an objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* at 460. If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

 An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* But "[i]n the absence of *specific* objections . . . ,

this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (D.S.C. 2009).

    **B.**    **Motions to Dismiss**

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The court need not, however, accept the plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." *Id.* at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). When considering a motion to dismiss, a court can consider "documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," and documents attached to a motion to dismiss, as long as they are "integral to the complaint" and "authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

    **C.**    **Liberal Construction of Pro Se Filings**

Pro se filings are to be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Still, the "special judicial solicitude" applicable to pro se filings "does not transform the court into

an advocate." *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). While the court may overlook technical shortcomings and formal deficiencies, such as incorrect labels or lack of cited legal authority, it may not construct a pro se party's legal arguments for him. *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022); *Brunson v. Benedict Coll.*, No. 3:22-cv-03921-JDA, 2024 WL 4284657, at *3 (D.S.C. Sept. 25, 2024); *see also Waiters v. Hous. Auth. of Florence*, No. 4:21-cv-02527-JD-KDW, 2023 WL 2815320, at *6 (D.S.C. Jan. 30, 2023).

## II.     The Report

The magistrate judge issued a thorough, well-reasoned report recommending that Defendants' motions be granted. [ECF No. 99.] She made every effort to construe the 117-page complaint in the light most favorable to Plaintiff, set forth the applicable legal standards, and explained her reasons for recommending dismissal in great detail. *Id.*

### A.     Factual Background & Summary of Claims

The following summary is drawn verbatim from the Report:

I.     Background

Proceeding pro se, Plaintiff paid the filing fee and submitted a 117-page Complaint against the HOA Defendants. ECF No. 1; *see also* ECF No. 1-3 (supplement to Complaint concerning "Allegation 3: Building Expenses"). Subsequently, Plaintiff was permitted to amend her pleading to add a claim against Defendant McCutchen. ECF No. 16. As Plaintiff is proceeding pro se, the court undertook its initial-review process, ultimately authorizing Plaintiff to serve the parties in accordance with Federal Rule of Civil Procedure 4. ECF No. 32. The court now considers the pending Motions to Dismiss, in which all Defendants seek dismissal of all claims brought against them.

II.     Facts and claims against HOA Defendants

In her Complaint, Plaintiff identifies the Board Member Defendants as follows: Kathy Barringer, Current Board of Director of A Place at the Beach IV; Carol Hollendonner, Previous Board of Director of A Place at the Beach IV; James Knaus, Previous Board of Director of A Place at the Beach IV; Lisa Watts, Atalaya Community Association Manager; Kendell Benjamin, Atalaya Property Management; Tracy Blackwood, Executive Assistant, Atalaya Property

Management; and Gina Pelliccio, Atalaya Administrative Coordinator. ECF No. 1 at 7-10; *see also* ECF No. 1 at 2-3 (identifying APATB IV HOA, APATB IV Board, and Atalaya as Defendants).

After listing the parties, Plaintiff's lengthy Complaint first lists several "violations" by Defendants. These include the following:

1. Violation #1: "Violating the Antitrust Federal Laws." ECF No. 1 at 11 (indicating APATB IV HOA was "comparing [h]ow much the next door HOA neighbors were charging their owners for the monthly fees" and trying to "MATCH" the HOA fees rather than basing the fees on APATB IV's actual expenses).

2. Violation #2: "Violating the Federal Laws: Discrimination for Racism; Racial/Color Discrimination." ECF No. 1 at 2-13 (including no substantive detail of the claim; listing categories of potentially recoverable damages).

3. Violation #3: This section does not include specific "violations," but references the South Carolina Real Estate Commission (SCREC) and then lists "Conversion" and "Fiduciary Duties and Standards of Care" as subheadings, apparently as matters to be reported to the SCREC. ECF No. 1 at 13. Plaintiff indicates a licensing authority such as the SCREC could suspend or revoke licenses or report to judicial authorities. *Id*. at 13-14. Without explaining more about how it relates to the SCREC, Plaintiff then states the APATB IV HOA "deal[t] with owners, especially foreign born American with Absolute lack of respect, close[d] door policy, treating owner in uncivilized manner, e.g., like inmate in Alcatraz, not in civilized, honorable, respectable behavior." *Id*. at 14.

4. Violation #4: References the South Carolina Horizontal Property Act, 1967; Indicates the APATB IV violated By-laws, page 147, which requires "51% of all co-owners" to "adopt decisions" and notes that By-Laws "may be amended or modified at any time where two thirds of the owners agree." ECF No. 1 at 14. Plaintiff submits Defendant Director Hollendonner "changed the rules of presenting the candidates" for Board elections when Plaintiff had started to apply for a "financial opening Board position" in 2020-2021 and after, by "establishing a new application of the Board nominees with only 2 to 3 lines under each subject," thereby "restrict[ing] the Board nominees from explaining why and what plan the nominees have for that position." *Id*. at 15. Plaintiff indicates this change to the application was effected "without any owner approval, just to limit any candidate from being able to explain his plans, so only the preapproved owners by the Board would be elected in the Board." *Id*.

5. Violation #5: Plaintiff claims a violation of SC Home Owners Association Acts and APATB IV Bylaws regarding the requirement of an annual audit

5

by a certified public accountant. *Id*. at 15 (including no statutory reference or additional information).

6. Violation #6: Plaintiff claims a violation of the "Rules and Regulations of Home Owners Associations in South Carolina," referencing the Office of the Attorney General. ECF No. 1 at 16. Plaintiff cites S.C. Code Ann. § 33-31-1620 and § 33-31-160(b) and (c) as requiring a nonprofit corporation to furnish its latest financial statements to any member who demands it and permitting a member who gives written notice to inspect and copy accounting records. *Id.*; *see also id.* at 17 (listing other requirements of HOA and Nonprofit Corporation Acts, *but not proffering specific factual allegations that these requirements were violated*).

Plaintiff provides the following detail in a section called her "Statement of Claim":

Plaintiff purchased a unit at APATB IV in 2006. ECF No. 1 at 20. Plaintiff then lists three real estate companies that have been involved with the HOA since that time: J.W. Property from when Plaintiff purchased condo in 2006 until 2014; White Realty from July 2014 to July 2020; and Atalaya Realty from July 2020 until present (2024). Plaintiff claims she found "almost every item in the budget has been abused, with unrealistic, unacceptable numbers without any reasonable response from the HOAs; accompanied with the ultimate level of rudeness with the owners, especially the Plaintiff, Foreign Born American Citizen, who cross[ed] the red line and dared to ask questions about the corrupted budget." ECF No. 1 at 20.

Plaintiff then sets out various "Allegations," listing them in parts.

"Part I, "Misconduct Budget," alleges "The HOA Abusive [sic] the Owners' Budget," and includes various allegations:

- "Allegation #1: The Annual Audit Budget." ECF No. 1 at 21. Plaintiff lists various issues related to alleged failure of the management companies to provide information and alleges a violation of several South Carolina Code Sections, APATB IV By-laws, and "conversion." *Id*. at 21-23.

- "Allegation #2: Building Insurance.["] ECF No. 1 at 25. Plaintiff alleges she has discovered the charges to the owners was "far over" the actual insurance payments from 2015 through 2019, indicating the HOA was not able to "answer these overcharges payment till present 2024." *Id*.; id. at 25-32 (including various specific examples of alleged issues).

- "Allegation #3: Building Expenses." ECF No. 1 at 34. These allegations include claims related to a plumbing issue at Plaintiff's own unit as well as claims that seem to allege the HOA would "force the owners to pay for the

6

repairs" that should have been paid from the HOA's building-repair budget. *Id*. at 34-39.

- o In a request received by the court on October 15, 2024, Plaintiff supplemented "Allegation #3: Building Expenses" with details regarding various plumbers' bills. *See* ECF No. 1-3 at 1-5.

- "Allegation #4: Money in Reserve." ECF No. 1 at 39. These allegations question the amount of money held in reserve beginning in 2010. *Id*. at 39-40.

- "Allegation #5; from the Owners' budget; Item #810: Printing/Postage/Office Supply = $4,000 per year." ECF No. 1 at 40. These allegations note postal fees have been greatly reduced because of email usage and indicate expenses from Item #810 are mainly related to "car parking paths." *Id*. at 40-43.

- "Allegations #6: New Item in the Budget: #530 Exterior Pest Control $500 per year?" Here, Plaintiff indicates this was never a budgeted item until Atalaya became involved in 2020. ECF No. 1 at 43-44.

- "Allegation #7: From the Owners' Budget: A. Item #827 Administrative & B. Item #830 Annual Board[] Meeting & Director Expenses." ECF No. 1 at 45. These allegations question various specifics regarding these line items. *Id*. at 45-48.

- "Allegation #8: Overcharges Items in the Budget." ECF No. 1 at 49. Here, Plaintiff alleges the allocated budgets for various items including landscaping, pool, and fuel were overblown and did not realistically reflect what such items or services would actually cost. *Id*. at 49-51.

- "Allegation #9: The Laundry Washing Machines." ECF No. 1 at 51. Here, Plaintiff complains that the HOA, under Atalaya, installed washing machines that were much smaller than the owners or occupants needed for doing their laundry. Plaintiff submits the reduced sizes would require owners or renters to do more loads of laundry. Plaintiff also questions why the HOA increased the cost-per-load and inquires what the HOA's goal was for the benefit of the owners. *Id*. at 51-52.

- "Allegation #10: TV Cable TV & Internet." ECF No. 1 at 52. Plaintiff alleges the HOA provides the cheapest available cable package while increasing the cable fees in the owners budget. *Id*. at 52-53.

- "Allegation #11: Maintenance Man." ECF No. 1 at 53. Plaintiff alleges Atalaya is using the same maintenance man for APATB IV and other buildings and seeks clarification as to whether APATB IV is being charged for a full-time maintenance person. *Id*. at 53-54.

- "Allegation #12: HOA Lawyer Mr. McCutchen['s] expenses paid from the owners budget." ECF No. 1 at 54. Plaintiff notes Lawyer McCutchen sent Plaintiff a "hostile letter" on behalf of the HOA and inquires whether the HOA paid McCutchen out of the owners budget "to defend themselves against the Plaintiff, for their failure to answer the Plaintiff's questions for the abused budget." *Id*. at 55. Plaintiff questions the legality of such an arrangement. *Id*.

- "Allegation #13: Antitrust Federal Laws." ECF No. 1 at 55. Plaintiff alleges that, since 2010, the HOA's responses to Plaintiff's inquiries about the budget involved the HOA's comparing itself to neighboring HOAs, rather than examining/explaining APATB IV's actual expenses. *Id*. at 55-56.

- "Allegation #14: The HOA are taking advantages from the inflation by keep increasing the monthly fee every year with over charges unrealistic budget that the monthly fee becomes: 'life time mortgage' will never end [sic]." ECF No. 1 at 57; *id*. at 57-58.

"Part II," relates to allegations against Board Members Barringer, Hollendonner, and Knaus and against White Realty and Atalaya Realty, ECF No. 1 at 59, and includes these allegations:

- "Allegation #15: HOA never was able to answer the corrupted budget questions." ECF No. 1 at 59. This section includes various specific allegations and examples of how Plaintiff believed her questions about the budget were not handled appropriately. *Id*. at 59-64.

- "Allegation #16: In 2018: Denied the Plaintiff's suggestion to have Financial Committee with a lawyer. HOA with White [Realty]." ECF No. 1 at 64. Plaintiff alleges the Board refused to consider her suggestion of having a lawyer on the finance committee, notes Director Knaus resigned after that suggestion and sold his condo in 2018 but remained on the board until 2020. Plaintiff indicates she received a "hostile letter" from the Board, including Knaus, that supported White Realty. *Id*. at 64-66.

- "Allegation #17: The HOA was fighting and opposing the Plaintiff against applying for the Opening Financial Board Position. Violation 'Discrimination for Racism'." ECF No. 1 at 66. Plaintiff indicates she twice tried to run for the "Financial Opening Position in the Board." *Id*. The only date she discusses in detail is when she ran for that position in August 2016. Plaintiff indicates that, as soon as she sent her email to the HOA applying for the position, she received numerous hostile emails from owners, some of whom she barely knew. *Id*. at 66-67. Plaintiff questions how owners knew so quickly that she was running. Plaintiff alleges the HOA "wanted to be sure that the opening financial position would NOT be for a Foreign Born

8

American like the Plaintiff, regardless of the background qualifications and experiences." *Id*. at 67.

- "Allegation #18: February 2020: The Plaintiff filed a case in the Better Business Bureau" regarding the "corrupted budget questions," but APATB IV responded that it had already answered the allegations. ECF No. 1 at 68.

- "Allegation #19: February 2020: The Plaintiff filed a complaint in the Consumer Affairs," and APATB IV again indicated it had already answered Plaintiff's complaint. ECF No. 1 at 68.

- "Allegation #20: The Plaintiff Hired a Paid Lawyer" who apparently complained to the HOA Board, only to be advised that Plaintiff's complaints had already been answered. ECF No. 1 at 69.

- "Allegation #21: White [Realty] closed their Business after 56 years in Real Estate Businesses." ECF no. 1 at 69. Plaintiff then includes allegations that she had made various complaints to White and the HOA but White never answered her questions. *Id*. at 69-71.

- "Allegation #22: The New Atalaya [Realty], With 'The Hostile Closed Door Policy' Toward the Owners, did not Provide the Owners with Information the Owners Used to have from the Previous Realtors, and Never answered the Plaintiff['s] abused budget questions." ECF No. 1 at 72. Plaintiff alleges Atalaya had "'closed door hostile policies against the owners'" and treated owners "especially with Foreign Born American Origin, who dared to ask questions" with absolute hostility, "as if the Plaintiff was an inmate in Alcatraz without any respect[.]" *Id*. The following allegations include details of specific questions Plaintiff posed regarding the budget. *Id*. at 72-73.

- "Allegation #23: SECOND: The HOA refused not provide [sic] the Owners with the Owners' information." ECF No. 1 at 74. Plaintiff alleges the HOAs did not provide owners' contact information to other owners except for providing the information of a few owners who consented to same. Plaintiff contrasts this with the HOAs providing the owners information to various realtors and construction companies. *Id*. at 74-75.

- "Allegation #24: Violation in the Application for the Opening Board Member Position, to be sure ONLY the Board Chosen Owners would be elected." ECF No. 1 at 75. Plaintiff again relays that it was made difficult for her to apply to the financial board member position in 2016; she also notes a similar issue in 2020. Plaintiff complains she was restricted from including detailed information regarding why she was seeking the position. *Id*. at 75-77.

9

- "Allegation #25: What Exactly [are] the Real Board Members' Degrees[?]" ECF No. 1 at 77. Plaintiff lists various board members and questions whether they had degrees and experience they indicated they had when the sought to be on the Board. *Id*. at 79.

- "Allegation #26: Fake Annual Board Meeting With the Owners." Plaintiff alleges the HOA had specific goals in mind during annual meetings and indicated to Plaintiff her line would be muted if she asked about the budget during the meetings. ECF No. 1 at 80-82.

- "Allegation #27: HOA Both A. The Board Members & B. Atalaya [Realty] Became the 'Untouchable,'" and homeowners were to contact Atalaya employees "Jimmy or Sarah" with questions. Homeowners were instructed not to contact board members. ECF No. 1 at 82. Plaintiff alleges Atalaya employees "hardly" answered her phone calls or hung up on her, violating federal law concerning racial discrimination. *Id*. at 83; *see id.* at 83-86 (including various examples).

- "Allegation #28: Lack of Fiduciary Duties and Standards of Care." ECF No. 1 at 86. Plaintiff notes Atalaya hired Lawyer McCutchen, references the February 8, 2024 "hostile letter" McCutchen wrote to Plaintiff, and questions whether McCutchen should be paid from the APATB IV Owners' Budget. *Id*. at 86-88.
    - In an amendment received by the court on September 13, 2024, Plaintiff added McCutchen as a party, citing the "Slander Letter" dated February 8, 2024. ECF No. 1-2 at 1. Plaintiff indicated this letter had been referenced in "Allegation #28." *Id*. The so-called "Slander Letter" is attached to the Complaint at ECF No. 1-2 at 2.

- "Allegation #29: Discrepancies between the stories of: the Plaintiff['s] Complaint against Atalaya Hostility vs. HOA; Atalaya [Realty] employees' Hostility against the Plaintiff." ECF No. 1 at 89. Here, Plaintiff references her January 29, 2024 email regarding her alleged treatment by Atalaya employee Blackwood and indicates it is at odds with information in Lawyer McCutchen's February 8, 2024 email to Plaintiff. Plaintiff indicates video of the January 29, 2024 encounter will provide the full story. *Id*. at 89-90.

- "Allegation 30: HOA Refused to Fix the Plaintiff's Broken Screen Door from the Hurricane." ECF No. 1 at 90. Plaintiff alleges the HOA only paid for repairs when it was in the HOA's financial interest, noting at times they made special assessments for such repairs. *Id*. at 90-92.

- "Allegation 31: Un-trusted Hostile HOA." ECF No. 1 at 93. This allegation relates to a complaint Plaintiff made about some palm trees the HOA planted that she feared would block her beach view. *Id*. at 93-94.

- "Allegation #32: Atalaya's Respon[se] to the Plaintiff's Consumer Affairs Complaint." ECF No. 1 at 94. Plaintiff alleges Atalaya denied any responsibility for the allegedly corrupted budget, claiming that the Board, not Atalaya, approves the budget. Plaintiff includes information about Atalaya's raising of HOA fees and indicated Atalaya defended itself by attacking Plaintiff's character. *Id*. at 94-96. Plaintiff also sets out allegations concerning White Realty's misconduct with the Board, providing various examples. *Id*. at 96-100.

- After the 32 Allegations, Plaintiff includes several "Notes" in her pleading. The notes essentially reiterate allegations made above in the pleading. ECF No. 1 at 101-02.

- Plaintiff then lists several "Conclusions." These "Conclusions" discuss the rising number of complaints against HOAs in general and question who should be handling such complaints. ECF No. 1 at 102-05.

- Plaintiff's pleading then includes several "General Notices from the Plaintiff." ECF No. 1 at 106-08 (essentially recapping Plaintiff's allegations and concerns).

- Plaintiff then discusses "Injuries," which again includes a recap of the complaints Plaintiff has with the HOA Defendants and HOA systems in general. ECF No. 1 at 108-10.

- In the "Relief" section, Plaintiff indicates the real issues are not between her and APATB IV HOA but between "the Owners of the condos on the Ocean Front in Myrtle Beach" and "the HOAs of the Ocean Front in Myrtle Beach." ECF No. 1 at 112. Plaintiff claims the SCREC directed her to file her case in federal court. *Id*. at 112-13. Plaintiff lists several things she seeks as relief if the HOA is found "guilty," including: "retroactive back pay" to reimburse Plaintiff for budget money the HOA abused and took from her, for "fake bills," damage by the HOA's plumber, a damaged screen door, and compensation for Plaintiff for all the work she did on her case since 2010. *Id*. at 113-14. Plaintiff also seeks her court expenses and wishes to have Congress "establish a New HOA Board" under new jurisdiction and have the IRS audit the HOA's budgets. *Id*. at 115-16.

III.    Claim against Defendant McCutchen

Plaintiff was permitted to amend her pleading to add a claim against Defendant McCutchen. ECF No. 16 (granting Plaintiff's Motion to Amend). In the granted Motion to Amend, Plaintiff requested to have "HOA lawyer, Mr. McCutchen, IV," added as a party "for the 'SLANDER LETTER, February 8, 2024, with total false accusations against the Plaintiff, that never happened and could not be proved." ECF No. 11 at 1 (closing internal quotation mark omitted in original).

11

> Plaintiff also indicates that "both the HOA and Mr. McCutchen the lawyer did not respect the lawyer requests in the lawyer's letter, according to my **Allegation #28: Lack of Fiduciary Duties and Standards of Care**." *Id.* (emphasis in original). Attached to the Motion to Amend is the February 8, 2024 letter to Plaintiff from McCutchen. Sent from McCutchen, Vaught, Geddie & Hucks, P.A., through Defendant McCutchen and addressed to Plaintiff as "Dear Homeowner," the body of the letter reads as follows:
>
>> This firm represents A Place at the Beach—Myrtle Beach No. 4 Homeowners Association, Inc. (the "Association") in its general business affairs. It has been brought to our attention that you have verbally attacked and harassed certain members of the Board of Directors in the Association along with the property management company to such a degree that you are hereby demanded to cease any and all communications with any Board members, the auditor and the property management company at this time. Any and all communications must come through me in writing, via email (mac@lawyersatthebeach.com), and I will discuss those with the Board.
>>
>> Please be advised that if any more emails or phone calls are made to the Board of Directors for A Place at the Beach—Myrtle Beach No. 4 Homeowners Association, Inc., the auditor for the Association or the property management company for the Association, you will not receive a response from those parties and the communications will be forwarded to me. Additionally, I have discussed at length any and all available legal remedies with the Board, and you are hereby put on notice that if your actions do not cease, the Board is prepared to use the same to ensure these actions do not continue against all parties.
>>
>> Thank you for your attention to this matter.
>
> Feb. 8, 2024 Ltr. from McCutchen to Plaintiff, ECF No. 11-1. The Motion to Amend was granted, and the Motion and accompanying letter were appended to Plaintiff's Complaint. ECF No. 1-2. Defendant McCutchen has moved to dismiss Plaintiff's claim against him. ECF No. 53.

*Id.* at 2–10 (footnotes omitted).

B.     **Legal Analysis & Conclusions**

1.     **Claims Against the HOA Defendants**[3]

i.     **Federal Claims**

Liberally construed, Plaintiff's complaint appears to allege that the HOA is conspiring to monopolize and restrain free competition in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.* [ECF No. 99 at 14.] The magistrate judge recommended dismissing Plaintiff's antitrust claims because Plaintiff failed to state a cognizable cause of action, and, even if she had, her claims are nonetheless barred by the Sherman Act's statute of limitations. *Id.* at 14–16.

Plaintiff also asserts claims of racial discrimination without clearly identifying their legal bases. *See id.* at 16–17. The HOA Defendants analyzed Plaintiff's claims under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ("FHA"). *See id.* at 17. The magistrate judge concluded that, to the extent that Plaintiff alleges discrimination in violation of the FHA, she failed to allege facts plausibly showing that the actions of the HOA Defendants had a discriminatory impact or purpose. *Id.* at 18.

In her response, Plaintiff stated that the HOA discussion was "irrelevant," but she failed to identify any other federal law or constitutional provision in support of her discrimination claims. *See id.* at 18–19. As a result, the magistrate judge concluded that Plaintiff's complaint does not satisfy the *Twombly*/*Iqbal* pleading standard. *Id.* at 19 ("Plaintiff has not espoused an underpinning

---

[3] The magistrate judge recommended dismissing the claims against Defendants Kathy Barringer, Carl Hollendonner, James Knaus, Lisa Watts, Kendell Benjamin, Tracy Blackwood, and Gina Pelliccio (collectively, the "Individual HOA Defendants") because Plaintiff failed to allege that they acted outside of their official capacities as HOA board members and/or Atalaya employees. *See* ECF No. 99 at 12–13. The court declines to adopt this section of the Report. Private individuals can be sued in their individual capacities even where their alleged wrongful acts were committed in their official capacities as members and/or employees of some private entity. Regardless, Plaintiff has still failed to state a claim against the Individual HOA Defendants.

13

for her legal theory, let alone provided any recitation of the elements of her purported cause of action."). So, "[r]egardless of their statutory basis, . . . Defendants' Motion to Dismiss Plaintiff's claims of racial discrimination should be granted." *Id.* at 20.

### ii. State-Law Claims

The magistrate judge also recommended dismissal of Plaintiff's state-law-claims, which include allegations of conversion and violations of the SCREC, S.C. Code Ann. §§ 40-57-5 *et seq.*, the South Carolina Horizontal Property Act, S.C. Code Ann. §§ 27-31-10 *et seq.* (the "SCHPA"), the South Carolina Nonprofit Corporation Act, S.C. Code Ann. §§ 33-31-101 *et seq.* (the "Nonprofit Act"), and the HOA's governing documents. *Id.* at 20–21. These claims are derivative in nature, but Plaintiff did not plead them as such. *Id.* at 21. So the magistrate judge reasoned that "[t]o the extent Plaintiff makes claims to redress budgetary and other alleged wrongs of the Board, those claims are not personal to her and should be dismissed." *Id.*

The magistrate judge further explained that, even apart from their derivative nature, Plaintiff's state-law claims are insufficient. *Id.* at 21–24. Her allegations that the HOA violated South Carolina real estate laws are unsupported by specific facts and do not identify a statute providing her a private right of action. *Id.* at 22. Plaintiff's SCHPA claims likewise do not specify which provisions were violated or provide supporting facts. *Id.* Her conversion claim fails because she has not established a right to a "specific, identifiable fund" of money. *Id.* at 23. Finally, to the extent that Plaintiff seeks to raise additional claims under state law, they are not set forth with sufficient clarity to survive a motion to dismiss.[4] *Id.*

---

[4] Since none of Plaintiff's state-law claims constitute a valid cause of action, the magistrate judge declined to fully consider whether her claims are subject to dismissal on statute-of-limitations grounds. [ECF No. 99 at 23 n.9.] That said, the Report notes that "dismissal on timeliness grounds is appropriate for many of Plaintiff's allegations. *Id.*

### 2. Claims Against Mr. McCutchen

Plaintiff's claim against Mr. McCutchen appears to sound in defamation. *Id.* at 24. While Plaintiff refers to his correspondence as a "slander" letter, the magistrate judge correctly noted that the claim is more properly characterized as one for libel. *Id.* at 25. The claim nevertheless fails because Plaintiff has not alleged publication to a third party, and the letter does not contain false or defamatory statements attributable to Mr. McCutchen. *Id.* In her response memorandum, Plaintiff suggested that other claims might be asserted against Mr. McCutchen, but the magistrate judge found that the allegations she identified do not establish any additional causes of action. *See id.* at 26–27.

## III. Plaintiff's Objections

The court has carefully reviewed Plaintiff's objections to the Report. Although the court has endeavored to identify specific objections where possible, their organization and presentation make them at times difficult to follow. The governing standard requires this court to review de novo those portions of the Report to which specific objections are made and to review the remainder for clear error. *Elijah v. Dunbar*, 66 F.4th 454, 459–60 (4th Cir. 2023); *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (D.S.C. 2009) ("In the absence of *specific* objections . . . , this court is not required to give any explanation for adopting the recommendation.").

Turning to the substance of Plaintiff's objections, the court overrules each for the reasons explained below. Pages 1–5 of Plaintiff's filing appear to do little more than restate her allegations against Defendants or recount immaterial details, such as her academic credentials and the physical weight of the documentary evidence ("**7** pounds"). *See* ECF No. 102 at 1–5. Beginning at page 6, Plaintiff appears to engage with specific portions of the Report, loosely organizing her objections

15

under headings[5] tied to the corresponding Report pages. The court addresses each objection in the order presented.[6]

### A.     Page 9 – Claims Against Defendant McCutchen: Allegation Nos. 28 & 12

Plaintiff contends that Mr. McCutchen failed to respond to her emails and calls, and that, although he stated in his letter that communications to the HOA should go through him, the HOA nevertheless sent her plumbing bills directly. *See id.* at 6-7. She further challenges the HOA's actions in charging owners $2,000 per year for "Accounting [&] Legal" without explaining "why or to whom the HOA charging the lawyer." *Id.* at 7. To the extent that these statements are intended as objections, they are overruled. An attorney does not owe an ethical duty to respond to communications from non-clients. Even if the HOA acted against Mr. McCutchen's instructions by sending Plaintiff plumbing bills directly, rather than using him as an intermediary, that would not give rise to a cause of action against him. Finally, the inclusion of budgeted fees for legal and accounting services, standing alone, does not give rise to a cause of action.

### B.     Page 24 – Defendant McCutchen's Motion to Dismiss

Plaintiff next argues that her claim against Mr. McCutchen should survive because he failed to conduct due diligence before incorporating information from HOA board members into his letter to Plaintiff. *Id.* at 7–8. The court is not persuaded. Whether framed as a failure to investigate or otherwise, the claim sounds in defamation, and the elements of that cause of action are well-established. To state a claim for defamation, a plaintiff must plead the following elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a

---

[5] The subheadings below are those used by Plaintiff, as modified by the court for purposes of readability.

[6] Plaintiff frequently repeats certain arguments throughout her objections, but the court addresses each argument only once.

third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *McNeil v. S.C. Dep't of Corr.*, 743 S.E.2d 843, 848 (S.C. Ct. App. 2013) (quoting *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 748 (S.C. Ct. App. 2001)). Here, even assuming the information *was* false and that Mr. McCutchen performed *no* due diligence, Plaintiff has failed to allege that the information was published to a third party.

Plaintiff also objects that Mr. McCutchen's counsel ignored the substance of her claim, focusing solely on the word "slander" rather than providing evidence to disprove her allegations. *See* ECF No. 102 at 8–9. Her objection is overruled. At the motion to dismiss stage, defendants are not required to produce evidence; the court's task is to assess whether the pleadings state a claim under applicable law.

Finally, in his motion to dismiss, Mr. McCutchen argues that Plaintiff failed to allege any harm or damages due to his conduct. *See* ECF No. 53 at 5. Plaintiff responds in her objections by claiming for the first time that she has developed high blood pressure as a result of Mr. McCutchen's conduct. *See* ECF No. 102 at 9. The magistrate judge did not reach the issue of damages because the claim fails on other grounds, and the court likewise need not reach it here.

### C.     Page 12 – The HOA Defendants' Motion to Dismiss

Plaintiff objects to the magistrate judge's conclusion that claims against the Individual HOA Defendants should be dismissed because they were acting in their official, as opposed to individual, capacities. For the reasons explained in footnote 3, *supra*, the court declines to adopt this section of the Report. But Plaintiff's claims against the Individual HOA Defendants fail for the other reasons set forth in the Report, including the absence of factual allegations sufficient to state a claim.

D.  **Page 14 – Claims Against the HOA Defendants**

Plaintiff alleges the HOA budget is "overcharged" and that the HOA compared its fees to those of neighboring associations when she raised concerns. *See* ECF No. 102 at 15. According to Plaintiff, this constitutes an admission by the HOA Defendants that they are violating federal antitrust law. *See id.* at 15–16. The court agrees with the magistrate judge that these allegations do not state a claim under the Sherman Antitrust Act.

E.  **Page 16 – Racial Discrimination Claims**

Plaintiff lists a series of negative (or in her words, "hostile") interactions with Defendants, which she contends are "examples of racism." *See id.* at 17–19. Her allegations rest primarily on her assertion that similar incidents "NEVER happened to any American Born Owners before." *See*, e.*g.*, *id.* at 19. While the court has considered these allegations, they do not plausibly suggest discriminatory intent or disparate treatment based on race. Plaintiff's objection is overruled.

F.  **Page 17 – Fair Housing Act**

Plaintiff clarifies that the FHA is wholly irrelevant to her claims. *Id.* at 19–20. Given this clarification, the court need not address whether she has stated a claim under the act, and her racial discrimination claims fail because she has identified no other statutory or constitutional basis for bringing them.

G.  **Pages 20–23 – State-Law-Based Claims; Conversion**

Plaintiff disputes the magistrate judge's conclusion that her conversion claim fails because "she has not demonstrated a right to a 'specific[,] identifiable fund' of money." *Id.* at 20 (quoting ECF No. 99 at 23). She then proceeds with a laundry-list of figures purporting to show budgeting misconduct on the part of the HOA Defendants. *Id.* at 20–22. Even assuming her figures are accurate, the claims Plaintiff asserts challenge actions of the HOA Board and are therefore

derivative in nature. As the magistrate judge explained, Plaintiff cannot pursue derivative claims in her individual capacity. *See* ECF No. 99 at 21 ("To the extent Plaintiff makes claims to redress budgetary . . . wrongs of the Board, those claims are not personal to her and should be dismissed.").

### H.     Page 27 – Conclusion & Recommendation

Plaintiff concludes by restating her arguments and requesting the opportunity to proceed to discovery. *See* ECF No. 102 at 23–26. Because she has not stated a claim upon which relief can be granted, her request is denied.

## IV.    Conclusion

After reviewing the Report, the applicable law, and the record of this case in accordance with the above standards, the court adopts the Report as modified and **GRANTS** Defendants' motions to dismiss, ECF Nos. 53 & 79. Plaintiff's claims are dismissed **WITH PREJUDICE**, as she has not set forth a viable claim against any Defendant, nor suggested any new factual allegations or legal theory that could survive dismissal.

**IT IS SO ORDERED.**

August 29, 2025                                           Sherri A. Lydon
Columbia, South Carolina                         United States District Judge